```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Lora F. Snyder,                  :

      Plaintiff,             :

   v.                            :        Case No. 2:13-cv-1019

Fleetwood RV, Inc., et al.,      :        Magistrate Judge Kemp

      Defendants.            :

## OPINION AND ORDER

This case is about an allegedly defective (and very expensive) motor home. Briefly, Plaintiff, Lora F. Snyder, claims that the motor home, for which she paid in excess of $800,000, was defective when she bought it, could not be repaired successfully, and is unsafe to take out on the road.

The defendants, understandably, want to do a thorough inspection of the vehicle. Fleetwood sent Ms. Snyder a Rule 34 notice of inspection, and then an amended notice of inspection, back on December 16, 2014. (Docs. 31 and 32). Ms. Snyder responded with her own notice which stated, in effect, that she did not object to the inspection as long as it was conducted on her terms, which she included in the response. (Doc. 33).

That exchange of views did not result in an inspection. Defendants then moved to compel an inspection, as well as to permit a preliminary inspection so that they could create a safety protocol for their more complete inspection. (Doc. 38). The Court promptly set the matter for a conference, which was held on February 20, 2015. That day, prior to the conference, Ms. Snyder filed a response to the motion to compel in which she argued that her objections to the inspection were based on concerns for the safety of the public - she asserted that the motor home could neither be safely started nor safely driven - and preserving the integrity of the vehicle. (Doc. 40).

The Court stressed, at the conference, the need for the parties to work out an agreeable inspection protocol which resulted in the defendants' being able to obtain the information they needed to defend the case.  The Court gave them thirty days to do that, but it did not happen.  Several follow-up conferences failed to produce a different result.  Consequently, the issue has now been extensively briefed.  See Docs. 50, 54, and 59.  For the following reasons, the Court grants the motions to compel an inspection on the conditions set forth in this Opinion and Order.

The Court begins its analysis with some well-settled legal principles.  First, Fed.R.Civ.P. 34(a) allows an opponent in litigation to serve a request to "inspect, copy, test, or sample ... any designated tangible things...."  Second, "[p]roduction for purposes of destructive testing falls within that rule as well," and, third, "the decision whether to allow destructive tests rests within the sound discretion of the court."  Ostrander by Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 (D. Minn. 1988).  What these principles mean, in practice, is that inspection of an object of litigation like a motor home is presumptively proper, and the Court may even permit testing which may destroy (or change the functioning of) a portion of that object so long as care is taken to preserve anything which has evidentiary value.  Courts have even developed multi-factored tests governing the exercise of discretion in this area, such as this one from Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 614 (D. Md. 2006), listing the relevant factors as:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to

present evidence at trial.

Against this backdrop of precepts that make inspections presumptively permitted, and which allow alterations to the object in question so long as they do not prejudice the parties' litigation positions, Ms. Snyder continues to resist any inspection of the motor home which involves starting and driving it.  She argues, without citing any authority, that alterations to an object in litigation, necessary in order to permit a proper inspection of it, are not permitted "because the law does not provide for same."  (Doc. 54, at 4).  She then objects to having the motor home started and driven in its unaltered condition because the steering mechanism does not work due to leaks of hydraulic steering fluid, and because the steps unexpectedly extend while the motor home is being driven.  Part of her objection appears to be based on her claim that even with prior repairs similar to what Defendants now propose, the steering system malfunctioned.

Legally, Ms. Snyder's position is simply incorrect.  As Defendants aptly note in their reply, the cases dealing with destructive testing are broad enough to encompass modifications necessary to conduct the appropriate tests, destructive or otherwise.  See, e.g., Bostic v. Ammar's, Inc., 2011 WL 251009, *2 n.4 (E.D. Ky. Jan. 26, 2011)("[d]estructive testing is testing which would result in alteration or destruction").  Ms. Snyder has not argued that any of the proposed repairs would somehow prejudice her litigation position, and she has had ample opportunity to have her own experts inspect and test the motor home, since it is and has been in her possession.  Further, Defendants have proposed a test protocol that would permit Ms. Snyder's representatives to be present and to observe any repairs and testing which is done.  There do not appear to be any

3

reasonable alternatives available to Defendants, since many of the issues raised by the complaint relate to how the motor home behaves when driven.  In short, Ms. Snyder has not raised, either in any of her objections to Defendants' proposals or in her briefing in this Court, any legally sustainable reasons for preventing Defendants from conducting the inspection as they have proposed.  Further, although she has characterized her position as one of permitting an inspection as long as proper procedures are followed, her insistence that no repairs can be made, together with her assertion that the motor home cannot be started or driven without repairs, is tantamount to a total refusal to allow the inspection to proceed.

In fairness to Ms. Snyder, her arguments center around what she perceives to be the risks both to the driver of the motor home, any occupants, and the public from operation of the motor home.  The Court assumes that Defendants and their experts would not jeopardize their own safety and that they will conduct their repairs and any test drive in a reasonable manner, paying attention to the issues which Ms. Snyder is concerned about.  Additionally, Ms. Snyder has not presented the Court with any credible evidence - such as an expert report - showing that a safe test drive is either impossible or presents an unacceptable level of risk.  Under these circumstances, the Court will overrule her objections and allow the test to proceed.

For the foregoing reasons, the motions to compel inspection (Docs. 38 and 50) are granted.  Within fourteen days, Defendants shall conduct the inspection of the motor home in accordance with the protocol attached to Doc. 50 as Exhibit A.  Plaintiff and her representatives may be present during the inspection.  Defendants' request for attorneys' fees, although it presents a close question, is denied.

/s/ Terence P. Kemp
United States Magistrate Judge