IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lora F. Snyder,                     :

      Plaintiff,                  :

  v.                               :     Case No. 2:13-cv-1019

Fleetwood RV, Inc., et al.,         :     Magistrate Judge Kemp

      Defendants.                 :


OPINION AND ORDER

This matter is before the Court on numerous motions. Specifically, currently before the Court for consideration are a motion for summary judgment filed by defendant Spartan Chassis, Inc. ("Spartan") (Doc. 44), a motion for summary judgment on Counts I and II of the complaint filed by defendant Fleetwood RV, Inc. ("Fleetwood") (Doc. 46),  a motion to compel discovery responses from Fleetwood and Spartan filed by plaintiff Lora F. Snyder (Doc. 47), a cross-motion for summary judgment filed by Ms. Snyder (Doc. 55), a joint motion objecting to the consideration of certain exhibits attached to Ms. Snyder's cross-motion for summary judgment filed by Fleetwood and Spartan (Doc. 65), a motion for leave to disclose expert witnesses filed by Ms. Snyder (Doc. 86), and defendants' joint motion to strike Ms. Snyder's reply brief in support of her motion for leave to disclose expert witnesses (Doc. 89).  The motions have been briefed fully and are now ripe for consideration.  For the reasons set forth below, Ms. Snyder's motion to compel and motion for leave to disclose expert witnesses will be denied. Defendants' joint motion to strike Ms. Snyder's reply brief in support of her motion for leave to disclose expert witnesses also will be denied.  Fleetwood's motion for summary judgment will be granted in part and denied in part.  The motion will be denied to

the extent that it seeks summary judgment on the breach of
contract claim, but it will be granted to as to the Lemon Law
claim. Spartan's motion for summary judgment on Ms. Snyder's
Lemon Law claim will be granted, and Ms. Snyder's cross-motion
for partial summary judgment will be denied. Finally,
defendants' joint objection to Ms. Snyder's exhibits will be
overruled.

## I. General Background

In August 2011, Ms. Snyder sued Fleetwood and Spartan in the
Jefferson County Court of Common Pleas, Case No. 11-CV-460. Ms.
Snyder alleged that, despite paying $780,964.00 for a 2011
American Coach Motor Home, the mobile home was so substantially
impaired that it was worthless and unsafe for use. The parties
eventually settled the case. Under the settlement agreement,
Fleetwood and Spartan provided Ms. Snyder with a 2012 American
Coach Motor Home ("the Replacement Motor Home").

Ms. Snyder was not happy with the Replacement Motor Home,
either. Consequently, she filed a second lawsuit in the
Jefferson County Court of Common Pleas, Case No. 13-CV-426,
relating to the Replacement Motor Home, alleging that, despite
numerous attempts to repair the Replacement Motor Home, it
remains substantially impaired and unfit for use. On October 15,
2013, Fleetwood removed the Jefferson County case to this Court
based on diversity jurisdiction.

In the complaint, Ms. Snyder alleges that the defects and
nonconformities in the Replacement Motor Home include, but are
not limited to, the following:

**Life Threatening**

▸ Entrance steps extend (or may improperly stay
  extended) while the 2012 Replacement Motor Home is
  moving; the driver and occupants are unable to
  ascertain this malfunction until a collision
  occurs, such as most recently encountered by a

2

Spartan employee;

▸ Hydraulic leveling system uses steel jacks that do not always retract completely, or dangerously, partially retract;

▸ Burning rubber smell;

▸ Differential, defective and noisy;

▸ Steering problems:

a. Too much play in the steering wheel, which allows the 2012 Replacement Motor Home to drift;

b. Defective king pins and/or bushings/washers which make the front end so stiff that the 2012 Replacement Motor Home will frequently cause the overload valve on the hydraulic pump to kick out, which in turn shuts off the power steering;

c. Erratic hydraulic steering pump, which at time requires more than 100 pounds of force to run the steering wheel and yet a split second later requires only a force of 3 pounds of effort, resulting in the 2012 Replacement Motor Home lurching rapidly and dangerously;

d. Power steering pump completely malfunctioned, which results in the 2012 Replacement Motor Home being impossible to steer; and

e. Electrical system; periodically, the windshield wipers, cruise control, horn, etc. quit working without warning.

**Unsafe, Unusable:**

▸ Air-conditioners do not work properly;

▸ Stench in the shower;

▸ Door does not lock properly;

▸ Problems extending and retracting the generator;

3

- ▸ Frequently, engine batteries will not start the 2012 Replacement Motor Home;

- ▸ Full bathroom gets extremely hot;

- ▸ Loud vibration noise;

- ▸ Windows leak;

- ▸ Passenger side awnings are defective to the extent that damage occurred to the outside of the 2012 Replacement Motor Home; and

- ▸ The driver's side rollout top on the full slide is pulled open and dangling.

(Doc. 3 at ¶11)(emphasis in original). Ms. Snyder avers that these defects and nonconformities, which violate the warranties issued to her, render the Replacement Motor Home worthless and unusable. In Count I of the complaint, Ms. Snyder sets forth a claim for breach of contract. In Count II of the complaint, Ms. Snyder alleges a violation of the "Ohio Motor Vehicles with Warranty Conformities [sic] Act," O.R.C. §1345.72. Id. at 8. In Count III of the complaint, Ms. Snyder claims that she is entitled to "revocation in whole." Id. More specifically, Ms. Snyder alleges that "Defendants have failed to deliver the 2012 Replacement Motor Home as described in O.R.C. §1302.60 (UCC 2-601)," and "[a]s such, [she] may rightfully reject the 2012 Replacement Motor Home and has done so ...." Id. at ¶31.

## II. The Motions

### A. Spartan's Summary Judgment Motion

On March 24, 2015, Spartan filed a motion for summary judgment as to Count II of the complaint, namely Ms. Snyder's O.R.C. §1345 claim, also known as an Ohio "Lemon Law" claim. (Doc. 44). In the motion, Spartan argues that, because it is the manufacturer of the chassis and is not the "final manufacturer" of the Replacement Motor Home, it cannot be held liable under

4

Ohio's Lemon Law. Id. at 4. Spartan has not moved for summary judgment as to Counts I and III of the complaint.

### B. Fleetwood's Summary Judgment Motion

On March 30, 2015, Fleetwood filed a motion for summary judgment as to Ms. Snyder's the breach of contract claim in Count I and the Ohio Lemon Law claim in Count II. (Doc. 46). First, Fleetwood argues that, because Ms. Snyder has not identified an expert who will offer testimony about the value of the RV as accepted, she is unable to prove her claim for breach of contract, which is actually an express warranty claim. Fleetwood contends that "without that proof, there can be no warranty damages," and "[w]ithout warranty damages, there is no claim for breach of warranty..." Id. at 12. Thus, Fleetwood asserts that it is entitled to summary judgment on Ms. Snyder's breach of contract claim. Fleetwood also asserts that it is separately entitled to summary judgment as to the "punitive damages and attorney fee claims associated with this cause of action...." Id. Next, Fleetwood argues that Indiana law should apply to Ms. Snyder's Lemon Law claim and, under that law, Ms. Snyder's claim is precluded. Fleetwood further argues that, even if Ohio law applies, Ms. Snyder's Lemon Law claim is without merit because "the issues she complains of were not warranted by Fleetwood, thus cannot constitute a non-conformity." Id. at 20. Fleetwood also asserts that Ms. Snyder "does not have the service history or necessary expertise to establish any of the statutory presumptions necessary to state a lemon law claim." Id. On this basis, Fleetwood claims that it is entitled to summary judgment on Ms. Snyder's Lemon Law claim.

### C. Ms. Snyder's Motion to Compel

On April 1, 2015, Ms. Snyder filed a motion to compel discovery responses from Fleetwood and Spartan. (Doc. 47). Specifically, Ms. Snyder requests that this Court issue an order

compelling Fleetwood and Spartan to provide full and proper
answers and responses to her third set of interrogatories and
requests for production of documents.  She also requests that
this Court issue an order compelling Fleetwood to respond to her
requests for admission.  Spartan filed an opposition to the
motion and "a demand for sanctions against Plaintiff and
Plaintiff's Counsel." (Doc. 51).  Fleetwood also filed an
opposition to the motion.  (Doc. 52).  Ms. Snyder filed separate
reply briefs addressing Spartan's opposition and demand for
sanctions (Doc. 53) and Fleetwood's opposition (Doc. 61).

> D. <u>Ms. Snyder's Motion for Partial Summary Judgment</u>

On April 23, 2015, Ms. Snyder filed a cross-motion for
partial summary judgment as to her claims "under the Ohio Lemon
Law, Breach of Contract, and Breach of Warranty." (Doc. 55 at
1).  Her primary argument is that Fleetwood and Spartan failed to
deliver a conforming motor home to her, and, that she properly
rejected or revoked her acceptance of the Replacement Motor Home.
She does appear to concede that although "Defendant Spartan may
be liable to Defendant Fleetwood, it may not be liable to
Plaintiff under Lemon Law [sic]." <u>Id</u>. at 18.  She also argues
that she has proved her entitlement to reject the motor home in
its entirety and that an expert witness (or any witness) on
damages is not necessary in order for her to prevail on that
claim.

> E. <u>Ms. Snyder's Motion to Disclose Experts</u>

On November 30, 2015, Ms. Snyder filed a motion for leave to
disclose expert witnesses in this matter.  (Doc. 86).  Ms. Snyder
argues that defendants will not be prejudiced if her motion is
granted because she has already retained the experts' services,
defendants still have to complete their own inspections, and a
trial date had not been set in this case.  Defendants filed a
joint opposition to Ms. Snyder's motion (Doc. 87), Ms. Snyder

filed a reply brief in support of her motion (Doc. 88), and
defendants filed a joint motion to strike Ms. Snyder's reply
brief (Doc. 89).

III. <u>Motion to Compel</u>

In her motion to compel, Ms. Snyder first requests that this
Court order Fleetwood and Spartan to provide full and proper
answers and responses to her third set of interrogatories and
requests for production of documents.  Ms. Snyder explains that
the requested discovery seeks information related to Fleetwood's
transfer of the Replacement Motor Home to Spartan's facility for
repairs.  Ms. Snyder states that both Fleetwood and Spartan deny
having any information responsive to her request.  Ms. Snyder
states that it is "very challenging to believe" that Fleetwood
and Spartan do not have documentation relating to the transfer of
the Replacement Motor Home.  (Doc. 47 at 3).  She states:

> It defies logic and regular business principles that
> there is not one communication, order, signature, or any
> other document alluding to the transfer of the
> Replacement Motor Home between Defendants.  Therefore,
> Plaintiff files this Motion to Compel as the weight of
> reason suggests that Defendants have not made full
> disclosure of information related to the transfer of the
> Replacement Motor Home from Fleetwood's facility in
> Decatur, Indiana to Spartan's facility in Charlotte,
> Michigan other than what has already been produced.

<u>Id</u>.  Thus, Ms. Snyder insists that additional documents
concerning the transfer of the Replacement Motor Home must exist.

Ms. Snyder also seeks an order compelling Fleetwood to
respond to her requests for admission.  Ms. Snyder claims that
Fleetwood improperly objected to her requests on the grounds that
they exceeded the maximum number allowable (which, under Local
Civil Rule 36.1 is 40, including subparts), they were vague and
ambiguous, and they referenced documents which were not attached.
Ms. Snyder admits that each of the requests for admission
contained a subpart, so she acknowledges that they may have been

7

objectionable beginning with request number twenty. Ms. Snyder
explains "only those beyond Request No. 20 may be deemed to have
exceeded Rule 36.1; yet, Defendant Fleetwood began objecting
based upon the total number of Requests at Request for Admission
No. 16 by stating that some of the requests [sic] and based this
upon its suggestion that Plaintiff's Requests for Admission
contained discreet [sic] subparts...." Id. at 4. Ms. Snyder
further argues that her requests for admission were not vague and
ambiguous, and they referred to documents produced by Fleetwood
using Fleetwood's Bates label. Finally, Ms. Snyder requests that
this Court award her reasonable expenses, including attorney's
fees, incurred as a result of filing the motion to compel.

In opposition to Ms. Snyder's motion to compel, Spartan
suggests that the transfer of the Replacement Motor Home was a
routine event. Spartan states:

> In short, during repairs, Defendant [Fleetwood] asked
> Defendant Spartan to look at the subject motor home and
> determine if there were any repairs that for which
> Defendant Spartan may be better equipped to make. As it
> is a vehicle, and both Defendants work with vehicles
> regularly, this can be accomplished via a phone call and
> a drop off. As Plaintiff specifically states in her
> Motion, the vehicle was only transported approximately
> one hundred and fifty miles. This is far from the
> dramatic distance Plaintiff and her Counsel make it out
> to be.

(Doc. 51 at 2). Spartan adds that all the parties have produced
"hundreds of pages of documents," and within those documents "is
work order with a notation that the subject vehicle was received
from Fleetwood...." Id. Spartan states that, aside from the
work order which has already been produced, it "is confounded as
to what documentation Plaintiff anticipates finding." Id.
Spartan asserts that it has made a good faith attempt to
determine if any additional responsive documents exist, but it
has been unable to locate any. Spartan maintains that it should

not be required to "prove a negative" by somehow demonstrating that the documents do not exist.  Id.  Further, Spartan argues that because the motion is frivolous and Ms. Snyder filed it in an effort to cause undue delay, Ms. Snyder should be subject to sanctions pursuant to Fed. R. Civ. P. 37.

Fleetwood filed a separate opposition to Ms. Snyder's motion.  Fleetwood asserts that Ms. Snyder is incorrect in her assertion that there are no documents relating to the transfer of the Replacement Motor Home.  Fleetwood states:

> Attached hereto as Ex. B is FW 000154, which clearly states:  "Take unit to Spartan for steering.  Took to Spartan."  The sending of the unit to Spartan was also addressed in handwriting in FW000203, Ex. C, and the same content was then entered into typed form FW000200. Ex. D. It is difficult to understand how plaintiff makes the representation that there is no reference to sending the unit to Spartan, given that one of her requests for admissions is based upon this very work order (#193138, RFA 4, discussed below.)

(Doc. 52 at 4).  Fleetwood argues that additional documents concerning the transfer do not exist, stating "given the relationship between Fleetwood and Spartan, a trip of less than three hours to deliver a unit built on a Spartan chassis to Spartan for chassis service – with knowledge of the owners – would not generate the paperwork that plaintiff posits."  Id. at 3.  Fleetwood adds that, because Spartan provided a separate warranty for the chassis and Ms. Snyder picked the unit up from Spartan, there is no reason that it would have received an invoice or generated any additional paperwork related to the transfer.  Fleetwood also states that, despite Ms. Snyder's counsel's deposing Dispute Resolution Administrator John Mestlin for five hours, the motion to compel is silent as to any testimony which supports her argument that additional documentation must exist.  Based on its position that there are no additional documents to compel, Fleetwood urges the Court to

deny Ms. Snyder's motion for that discovery.

Fleetwood also asserts that Ms. Snyder filed the incorrect motion to the extent that she is challenging its responses to her requests for admission. More specifically, Fleetwood states that Ms. Snyder should have filed a motion as to the sufficiency of an answer or objection under Fed. R. Civ. P. 36(a), as opposed to a motion to compel under Fed. R. Civ. P. 37, and the Court should deny the motion on this basis. Alternatively, Fleetwood asserts that if "the Court elects to treat the motion to compel as a motion as to the sufficiency of an answer or objection under Civ. R. 36(a)(6), it should be denied because plaintiff fails to articulate any measure by which the responses are insufficient." Id. at 5. Fleetwood explains that, despite its objections, it responded to each of Ms. Snyder's requests. For these reasons, Fleetwood urges this Court to deny Ms. Snyder's motion and to award it attorney's fees.

In reply to Spartan's opposition, Ms. Snyder reiterates that her motion to compel "is based on her logical belief that two large corporate entities such as Defendants in this matter would have documentation of transferring a twenty-five ton motor home, valued at more than $800,000, between two facilities for a period of four months during unsuccessful attempts to repair." (Doc. 53 at 1-2). More specifically, Ms. Snyder argues:

> Defendants have produced no document which indicates why
> Defendant Fleetwood had to send the 2012 Replacement
> Motor Home to Defendant Spartan's facility for
> unsuccessful attempted repairs. From May 7, 2012 through
> July of 2013, the 2012 Replacement Motor Home was
> serviced at Defendant Fleetwood's facility at least five
> different times, and yet, there is no evidence that, on
> those previous occasions, the 2012 Replacement Motor Home
> was taken to Defendant Spartan's facility for repairs.
> Thus, Plaintiff is confident there is some kind of
> documentation from either or both Defendants which
> explains why the 2012 Replacement Motor Home had to be
> taken to Spartan's facility in July of 2013 when prior

10

> practice regarding the 2012 Replacement Motor Home did
> not include such a transport.  Plaintiff has filed this
> Motion to Compel because she views Defendants [sic]
> Answers and Responses to Plaintiff's Third Set of
> Interrogatories and Requests for Production of Documents
> as evasive and incomplete.

Id. at 2.  Ms. Snyder also reiterates her request for reasonable
attorney's fees and costs associated with filing the motion to
compel.  She urges the Court to deny Spartan's request for
sanctions, stating that the motion to compel is "substantially
justified...."  Id. at 3.

In reply to Fleetwood's opposition, Ms. Snyder incorporates
the arguments she made in reply to Spartan's opposition.  Again,
she asserts that additional documents must exist relating to the
transfer of the Replacement Motor Home.  Ms. Snyder elaborates
further, stating:

> Defendant Fleetwood's Exhibit C to Doc. 52 states there
> is "nothing wrong" with the 2012 Replacement Motor Home
> concerning Plaintiff's complaints of steering defects and
> nonconformities, and yet, that same sentence on the same
> document states the 2012 Replacement Motor Hone was sent
> to Spartan.  With no other documentation produced,
> Plaintiff is somehow expected to believe that there was
> "nothing wrong" with the steering of the 2012 Replacement
> Motor Home, according to Defendant Fleetwood, yet
> Fleetwood still decided to send the vehicle to Defendant
> Spartan, where it then stayed for four months whole
> further unsuccessful steering repairs were attempted and
> most major steering parts were replaced. Obviously, this
> makes no sense.

(Doc. 61 at 2).  Ms. Snyder states that although Mr. Mestlin was
not the appropriate person to testify as to whether additional
documents exist pertaining to the transfer, he testified about a
different repair issue and stated that Fleetwood had not produced
the work orders related to that particular repair.  Thus, Ms.
Snyder claims that Mr. Mestlin's testimony supports her position
that Defendants have not been forthcoming in producing responsive

11

documents.  In addition, Ms. Snyder hypothesizes that the
documents related to the transfer of the Replacement Motor Home
would refer to the defects and nonconformities, would explain the
need for further repairs, would contain guidance from Fleetwood
to Spartan concerning the work that needed to be done, would note
the individuals making the decision to transport, and would
contain the identity of the individual responsible for physically
transporting the Replacement Motor Home from Fleetwood to
Spartan.  Further, Ms. Snyder acknowledges the production of the
documents relating to the transfer attached to Fleetwood's
response, but she claims that they contradict one another
concerning the date on which the Replacement Motor Home was
received, the date service began, and the date service was
completed.  These contradictions, she claims, demonstrate that
additional documents must exist.

As to the requests for admission, Ms. Snyder requests that
the Court construe her motion to compel as a motion regarding the
sufficiency of the answer or objection under Fed. R. Civ. P.
36(a)(6).  Ms. Snyder claims that it is Fleetwood's
interpretation of the requests, and not the requests themselves,
that is unclear.  More specifically, Ms. Snyder claims that
Fleetwood is "inserting ambiguity [into the requests] where none
exists." Id. at 5.  Ms. Snyder then provides examples in an
effort to demonstrate that Fleetwood improperly provided
qualified responses over its objections, "to even the most
simplistic Requests where a simple admission or denial could be
utilized." Id. at 8.  Finally, Ms. Snyder reiterates her request
for reasonable attorney fees and costs associated with filing the
motion to compel.

The Court first addresses Ms. Snyder's argument that
additional documents relating to the transfer of the Replacement
Motor Home must exist and that she is entitled to the production

12

of those documents. Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate. Consequently, if a plaintiff such as Ms. Snyder does "not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, the[ ] motion to compel must fail." Alexander v. F.B.I., 194 F.R.D. 299, 301 (D.D.C. 2000). In this case, Ms. Snyder has produced only speculation as to the existence of additional documents relating to the transfer of the Replacement Motor Home from Fleetwood to Spartan. So long as Fleetwood and Spartan represent, through counsel, and in a written response to the document request at issue, that they have produced all responsive documents, that is sufficient without the need for further attestation by corporate representatives. See, e.g., Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 620 (D. Kan. 2005). Of course, trial counsel themselves have an affirmative obligation to insure that what their clients are telling them is accurate, see Bratka v. Anheuser-Busch Co., Inc., 164 F.R.D. 448 (S.D. Ohio 1995)(Graham, J.), and the Court presumes that they have discharged their duties in this case accordingly. Thus, Ms. Snyder's motion to compel additional documents relating to the transfer of the Replacement Motor Home will be denied.

The Court now examines the motion to compel as it relates to Fleetwood's responses to Ms. Snyder's requests for admission. Fed. R. Civ. P. 36(a) provides, in pertinent part:

> (1) Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > (A) facts, the application of law to fact, or opinions about either; and

13

(B) the genuineness of any described documents.

* * *

(4) Answer.  If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only of the party states that it made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

(5) Objections.  The grounds for objecting to a request must be stated.  A party must not object solely on the ground that the request presents a genuine issue for trial.

(6) Motion Regarding the Sufficiency of an Answer or Objection.  The requesting party may move to determine the sufficiency of an answer or objection.  Unless the Court finds an objection justified, it must order than an answer be served.  On finding that an answer does not comply with this rule, the court may either order that the matter is admitted or that an amended answer be served.  The court may defer its decision until a pretrial conference or a specified time before trial.  Rule 37(a)(5) applies to an award of expenses.

Id.  The purpose of Rule 36 "is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of the disputed issues, and to facilitate the presentation of cases to the trier of fact."  T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38 (S.D.N.Y. 1997).

In this case, Fleetwood is correct that Ms. Snyder should have brought her motion as a motion as to the sufficiency of an answer or objection under Fed. R. Civ. P. 36(a)(6), as opposed to a motion to compel under Fed. R. Civ. P. 37.  The Court, in its

14

discretion, will construe the motion as having been filed
pursuant to Fed. R. Civ. P. 36(a)(6) and will address the motion
on its merits.  As the movant, Ms. Snyder bears the burden of
demonstrating that Fleetwood's answers or objections were
insufficient.

     In her motion, Ms. Snyder fails to cite a particular answer
or objection, making only general arguments that the answers are
inadequate and the objections are improper.  Ms. Snyder discusses
Requests No. 4 and No. 5 for the first time in her reply brief,
only after Fleetwood addressed those particular requests in its
opposition to the motion.  To the extent she addresses those
particular requests, Ms. Snyder makes arguments concerning
disputed facts.  <u>See, e.g.</u>, Doc. 61 at 6 ("[t]he crooked steering
wheel is not the main problem; the main problem is the reason why
it is crooked").  As one court explained, disputed facts are
better left to be explored through other discovery devices:

> [r]equests for admissions are not intended for factual
> discovery that should be done through interrogatories and
> depositions.  They are a cruder device because a party
> may accept, deny or object to facts phrased by the
> opposition.  They exist to narrow the issues at trial
> where the parties' unambiguously agree.  The fact is that
> parties in litigation conflict.  They believe different
> things and they have different interpretations of both
> words and events.  The party that proffers the requests
> must recognize that its opponent may read those words
> differently.

<u>Joseph v. Fratar</u>, 197 F.R.D. 20, 22 (D. Mass. 2000), quoting
<u>Russo v. Baxter Healthcare Corp.</u>, 51 F. Supp.2d 70, 79 (D.R.I.
1999); <u>see also Piskura v. Taser Intern.</u>, 2011 WL 6130814, at *1
(S.D. Ohio Nov. 7, 2011)("[r]equsts for admissions are not a
general discovery device")(Litkovitz, J.)(citations omitted).
Fleetwood represents through counsel that it answered each
request for admission to the best of its ability, providing
qualified responses only when necessary and "admitting that the

documents it produced were genuine and described the services" it provided. (Doc. 52 at 10-11). Thus, Ms. Snyder fails to satisfy her burden of demonstrating that Fleetwood's answers or objections were insufficient.

Ms. Snyder also claims that there was no ambiguity in the documents referred to in the requests, yet in her reply brief she "acknowledges that there were instances of minor typographical errors (i.e. Request for Admission No. 5 Work Order No. 556164 was inadvertently transposed to 556154), particularly where the document numbers are difficult to read." (Doc. 61 at 7-8). Although Ms. Snyder attaches a reference sheet using Fleetwood's Bates numbers in an effort "to provide clarity," Ms. Snyder acknowledges that the documents referenced belong to Fleetwood. Id. at 8. It is unclear to this Court whether the substance of Fleetwood's answers would have been different if it had possessed Ms. Snyder's clarifying information at the time that it answered the requests. In any event, a party who has answered a request for admission has a duty to supplement its responses even absent a Court order. See Fed. R. Civ. P. 26(e)(1)(A)("A party ... who has responded to ... [a] request for admission – must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to other parties during the discovery process or in writing"). Thus, Ms. Snyder's clarifying information does not constitute grounds for granting her motion.

In addition, it is worth noting that Ms. Snyder acknowledges that her requests for admission exceed the maximum allowable under Local Rule 36.1, yet she never moved for leave to exceed the limit or attempted to explain why the additional requests were necessary. By answering all of Ms. Snyder's discovery

16

requests, Fleetwood opted to provide Ms. Snyder with more
discovery than she was entitled to under the federal rules.  For
the reasons set forth above, Ms. Snyder's motion will be denied.
(Doc. 47).

     With respect to the request for attorneys' fees, Fed. R.
Civ. P. 37(a)(5) authorizes an award of expenses, including
attorneys' fees unless any opposition to the motion is
substantially justified, or other circumstances make an award of
expenses unjust.  Given the record as it relates to Ms. Snyder's
motion, the Court finds that an award of expenses would be
unjust.  Thus, the requests for attorneys' fees and expenses will
be denied.

     IV. <u>Motion for Leave to Disclose Expert Witnesses</u>

     Ms. Snyder's motion for leave to disclose expert witnesses,
which at this juncture, would be untimely, states that she now
retained the services of two experts, defendants' inspections
have not been completed, a trial date has not been set, and
defendants will suffer no prejudice if the motion is granted.
Defendants filed a joint opposition to Ms. Snyder's motion,
arguing that the motion should be denied on the grounds that it
is untimely.  In addition, defendants also maintain that they
will suffer prejudice if the motion is granted because they will
incur additional discovery-related costs.  Defendants also argue
that they will suffer prejudice because the pending motions for
summary judgment are based in part upon the fact that Ms. Snyder
is unable to support her claims with expert testimony.  In reply,
Ms. Snyder argues that the delay in this case was caused by the
inspection and mediation process, not by her actions.  Ms. Snyder
again points to the fact that the Court has not set a trial date
or decided any dispositive motions.  Consequently, Ms. Snyder
asserts that the disclosure of expert witnesses at this juncture
would not adversely impact defendants.  Defendants filed a joint

motion to strike Ms. Snyder's reply, claiming that the reply improperly raises new arguments concerning the inspection. Defendants also reiterate that Ms. Snyder's request is untimely and should be denied on that basis.

The Court agrees that Ms. Snyder's motion is untimely. This case was filed in 2013. On December 12, 2013, the parties filed a Rule 26(f) report recommending that primary expert designations be made by August 11, 2014. The Court adopted that date in its December 18, 2013 preliminary pretrial Order. (Doc. 9). In an Opinion and Order issued on May 14, 2015, this Court observed that Ms. Snyder "has had ample opportunity to have her own experts inspect and test the motor home" but has not done so. (Doc. 63 at 3-4). Despite these facts, Ms. Snyder waited to file her motion for leave to disclose expert witnesses until November 30, 2015, well after the Court-ordered deadline.

As defendants point out, Ms. Snyder's only explanation for the delay is set forth for the first time in her reply brief. Thus, that argument is not properly before the Court for consideration. See Scottsdale Ins. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008)(noting that issues are waived when they are raised for the first time in a reply brief). Even if it were properly before the Court, Ms. Snyder's argument is without merit. If Ms. Snyder's counsel needed additional time for the disclosure of her experts based on the delays caused by either the inspection of the motor home by defendants' experts – a contention that seems misplaced – or due to efforts at mediation, her counsel could have filed a motion for an extension time before the relevant deadline passed. Further, new counsel entered an appearance in this case on June 15, 2015 and did not file a motion for leave until November 30, 2015, over five months later. Whether to disclose an expert witness in support of her claims and whether to seek an extension of time in order to do so

18

were strategic decisions made by Ms. Snyder's counsel; there is nothing in the record to suggest that counsel wished to disclose an expert but was somehow prevented from doing so. Accordingly, Ms. Snyder's motion is untimely, and she does not offer good cause for the delay.

Although not stated directly, Ms. Snyder's reply brief suggests that the timing of the instant motion may be due to her new counsel's strategic decision to pursue expert testimony despite the fact that her former counsel opted not to do so. As noted previously, however, new counsel did not file the motion in a timely fashion. Even if new counsel had moved for leave promptly, the change in strategy is an insufficient basis for granting leave where doing so would cause defendants to suffer prejudice. Whether Ms. Snyder's testimony alone is sufficient to establish the value of the Replacement Motor Home or whether she needs expert testimony in support of her claims is an issue in the pending motions for summary judgment. As discussed more fully below, Ms. Snyder argues that her testimony alone is sufficient and that she need not rely on expert testimony. Fleetwood opposes Ms. Snyder's position and argues that expert testimony is required. The relevant motions have been briefed fully and are now ripe for resolution. Further, additional discovery would be necessary if Ms. Snyder were permitted to disclose expert witnesses at this time. In light of these facts, defendants would suffer prejudice if Ms. Snyder's motion were granted. For the reasons set forth above, Ms. Snyder's motion for leave to disclose expert witnesses will be denied (Doc. 86), and defendants' joint motion to strike Ms. Snyder's reply will be denied as moot (Doc. 89).

V. <u>Motions for Summary Judgment</u>

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in

19

dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  "[I]f the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted."  Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995)(citation omitted).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motions must be decided.

## A. Breach of Contract Claim

In the briefs on summary judgment, Fleetwood and Ms. Snyder disagree about the nature of the breach of contract claim. While Fleetwood maintains that this claim is based upon an alleged breach of warranty, Ms. Snyder claims that it based upon a breach of the settlement agreement. As the Court of Appeals has observed, "the label which a plaintiff applies to [a] pleading does not determine the nature of the cause of action." Mead Corp. v. ABB Power Generation, Inc., 319 F.3d 790, 795 (6th Cir. 2003), quoting United States v. Louisville & Nashville RR Co., 221 F.2d 698, 701 (6th Cir. 1955). Rather, the Court is required to "probe deeper and examine the substance of the complaint." Id., quoting Minger v. Green, 239 F.3d 793, 399 (6th Cir. 2001).

In this case, Ms. Snyder's breach of contract claim provides, in pertinent part:

> Fleetwood and Spartan are engaged in the business of making motor homes, a consumer product, available to Snyder and performing repairs on said vehicle pursuit [sic] to its warranties. Snyder's acquisition of the 2012 Replacement Motor Home was accompanied by written factory warranties covering nonconformities or defects in material or workmanship. Said warranties were a significant part of the basis of the bargain between Snyder and the Defendants herein for the acquisition of the 2012 Replacement Motor Home. Snyder's acceptance of the 2012 Replacement Motor Home was induced by, and Snyder relied upon, these written warranties. Snyder has met all obligations and preconditions as provided in the written warranties. Fleetwood and Spartan, by its [sic] failure to attempt repairs and their unsuccessful attempts at repairs, have breached the written warranties issued with the 2012 Replacement Motor Home. The conduct of Fleetwood and Spartan in attempting to repair, failing to repair and scheduling repairs is malicious, willful, wanton and reckless, all resulting in Snyder failing to receive the benefit of her bargain and use of the 2012 Replacement Motor Home. As a direct and proximate result of the conduct of Fleetwood and Spartan described above, Snyder has suffered damages.

(Doc. 3 at ¶¶20-26). Under the plain language of the complaint,

21

the breach of contract claim is based on a breach of written
factory warranties.  Ms. Snyder argues that she is entitled to
summary judgment on this claim because there is no dispute of
material fact as to defendants' breach of the settlement
agreement.  Because the complaint sets forth a claim for breach
of the written factories warranties, and not a claim for breach
of the settlement agreement, Ms. Snyder's cross-motion for
partial summary judgment on this claim will be denied.

In its motion for summary judgment, Fleetwood raises a
choice of law issue concerning whether the substantive law of
Indiana or Ohio should apply to Ms. Snyder's claim.  As to the
breach of contract claim, however, Fleetwood acknowledges that
Indiana law and Ohio law are the same.  Fleetwood asserts that
Ms. Snyder is not entitled to recover damages for this claim
"because she is incapable of proving damages under either Indiana
law or Ohio law." (Doc. 46 at 8)(footnote omitted).  Fleetwood
states that the following standard governs damages for the breach
of an express warranty in both Indiana and Ohio:

> The measure of damages for breach of warranty is the
> difference at the time and place of acceptance between
> the value of the goods accepted and the value they would
> have had if they had been as warranted, unless special
> circumstances show proximate damages of a different
> amount.

Id., quoting Burns Ind. Code Ann. § 26-1-2-714, O.R.C. Ann.
1302.88.  According to Fleetwood, Ms. Snyder "has not identified
an expert with regard to the value of the RV as accepted."  Id.
at 9.  Fleetwood does not deny that both Indiana and Ohio allow
an owner of a motor vehicle to opine on the value of a motor
vehicle based upon its purchase.  In this case, however,
Fleetwood states that Ms. Snyder "expressly disclaims any
capability to offer a value on the RV as accepted."  Id. at 9.
Thus, the issue is whether Ms. Snyder's testimony is sufficient

prove damages for breach of contract claim.

Ms. Snyder does not dispute Fleetwood's recitation of the standard for the measure of damages, but she disagrees with Fleetwood's assertion that she needs an expert to establish such damages. Ms. Snyder states that she has "consistently testified that the 2012 Replacement Motor Home has no value to her." (Doc. 55 at 20). According to Ms. Snyder, her testimony alone is permissible to establish the value of the Replacement Motor Home accepted. This Court agrees.

The relevant law provides that "[t]he owner of personal property is competent to testify as its value," including a motor vehicle. See Coyle Chevrolet Co. v. Carrier, 397 N.E.2d 1283, 1287 (Ind. Ct. App. 4th Dist. 1979); see also Raymond v. Raymond, 2011 WL 5999039, at *3 (Ohio Ct. App. 10th Dist. Dec. 1, 2011)(noting that a lay witness may testify as to the value of the property if the witness "is familiar with the property itself and has current sufficient knowledge of the value of the item")(internal citation omitted). Fleetwood's asserts that Ms. Snyder's deposition testimony, wherein she stated that she "ha[d] no idea" about the vehicle's value on the marketplace, renders her incompetent to testify. (Doc. 46 at 9-10). Here, the record reflects that Ms. Snyder is familiar with Replacement Motor Home, and she is aware of its value based on her first-hand knowledge of its characteristics, condition, and potential use. Ms. Snyder has maintained throughout this litigation that the Replacement Motor Home has no value. Because she sufficient knowledge of the value of the Replacement Motor Home, she will be permitted to testify as to its value. It is up to the jury to determine what weight to attribute to Ms. Snyder's testimony.

Based on the foregoing, the Court will deny Fleetwood's motion for summary judgment on Ms. Snyder's breach of contract claim on the ground that she is unable to provide expert

23

testimony concerning the value of the vehicle. Fleetwood also states that it "is separately entitled to summary judgment as to plaintiff's punitive damages and attorney fee claims associated with this cause of action as a matter of law." (Doc. 46 at 12). The Court finds this argument to be premature. Consequently, the Court will deny that portion of Fleetwood's motion without prejudice.

B. <u>Lemon Law Claim</u>

In its motion for summary judgment, Fleetwood raises a choice of law issue, arguing, <u>inter alia</u>, that Ms. Snyder's Lemon Law claim should be decided based on Indiana law. Ms. Snyder disagrees, asserting that Ohio's Lemon Law governs her claim. According to Ms. Snyder, the Court does not need to engage in a traditional choice of law analysis because the settlement agreement contains a choice of law provision which reflects that this dispute is governed by Ohio law. The settlement agreement does provide that Ohio law governs any claims arising out of the agreement. However, the plain language of the agreement resolves the lawsuit concerning the 2011 American Coach Motor Home against Fleetwood and Spartan, which was pending in the Jefferson County Court of Common Pleas, Case No. 11-CV-460. Although the agreement does not prejudice Ms. Snyder from bringing claims related to the Replacement Motor Home, those claims do not arise out of the agreement such that its choice of law provisions would apply. Because this court is exercising diversity jurisdiction in this case, it will apply Ohio's choice of law rules to determine the applicable law. <u>See Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Courts analyzing a case under Ohio's choice of law rules must utilize a "flexible case-by-case approach." <u>Curl v. Greenlee Textron, Inc.</u>, 404 F. Supp.2d 1001, 1005 (S.D. Ohio 2005) (Marbley, J.)(citation omitted).

24

The Court must examine "two threshold questions ... before embarking on a choice of law analysis in Ohio." Sirlouis v. Four Winds Int'l Corp., 2012 WL 1068709, at *4 (N.D. Ohio Mar. 29, 2012). The first question is whether Ohio law and Indiana law genuinely conflict with respect to Ms. Snyder's Lemon Law claim. Fleetwood bears the burden of demonstrating that an actual conflict in the relevant state law exists. See id. Here, Fleetwood has satisfied its burden of demonstrating that a genuine conflict exists because Indiana's Lemon Law does not apply to recreational vehicles and Ohio's Lemon Law does. Compare Ind. Code Ann. §24-5-13-5 with Ohio Rev. Code Ann. §1345.71(D). The second question is whether the Lemon Law claim should be classified as sounding in contract or in tort. Sirlouis, 2012 WL 1068709, at *4. In the factually similar case of Sirlouis v. Four Winds International Corp., 2012 WL 1068709, *4 (N.D. Ohio Mar. 29, 2012), the Court noted that its "research revealed no case law answering th[e] specific question" of whether a Lemon Law claim should be classified as a contract claim or a tort claim. Although the Sirlouis Court assumed that the Lemon Law claim in that case should be classified as a tort, it analyzed the claim both as a contract claim and as a tort claim. Id. at *4-10.

To the extent that the Lemon Law claim arises under tort law, a presumption exists that the place of injury controls, unless another jurisdiction has a more significant relationship to the lawsuit. See Restatement (Second) of Conflict of Laws §146. Here, the place of injury is Indiana, where the vehicle was manufactured, acquired, and underwent warranty service. Thus, this Court must determine if Ohio has a more significant relationship to the lawsuit. In doing so, the Court must consider the contacts set forth in the Restatement (Second) of Conflict of Laws §145 in applying the principles in Restatement

25

(Second) of Conflict of Laws §6.  Section 145 instructs the Court
to consider the following contacts in applying §6:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury
    occurred,

    (c) the domicil, residence, nationality and place of
    incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between
    the parties is centered.

Id. at §145(2).  These contacts weigh strongly in favor of
applying Indiana law.  As Fleetwood points out, it is located in
Indiana, the Replacement Motor Home was manufactured in Indiana,
Ms. Snyder received the warranty when accepting delivery of the
Replacement Motor Home in Indiana, and the warranty repairs took
place in Indiana.  Ohio's only connection to this case appears to
be based on the fact that Ms. Snyder is an Ohio resident.
Although the complaint generally alleges that Fleetwood and
Spartan conduct business in Ohio, none of that business appears
to be related to this case.

    Certainly some of the §6 factors weigh in favor of applying
Ohio law.[1]  For instance, the needs of interstate systems support
the application of Ohio law because an Ohio resident may hesitate
to purchase an RV in Indiana

    knowing that she may not have a Lemon Law claim to
    protect her.  On the other hand, there would be little
    risk of disrupting commercial intercourse if Ohio law
    applied, since the RV consumer would have no such
    disincentive in making an out of state purchase.

---

[1] The §6 factors include: (a) the needs of interstate and international
systems, (b) the relevant policies of the forum, (c) the relevant policies of
other interested states and the relative interests of those states in the
determination of the particular issue, (d) the protection of justified
expectations, (e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and (g) ease in the
determination and application of the law to be applied.

Sirlouis, 2012 WL 1068709, *9.  Further, Ohio's policy of
protecting its residents from purchasing vehicle that is a lemon,
even if that vehicle is purchased out of state, weighs in favor
of Ohio law.  Id. at *8 (noting that "[t]he Ohio Lemon Law,
unlike that of some states, contains no statutory requirement
that a vehicle be purchased in state to invoke the law's
protection").  These factors, while noteworthy, cannot overcome
the presumption that Indiana applies because Ohio does not have a
more significant relationship to this lawsuit.  Consequently,
Indiana law applies.  Because Indiana specifically exempts RVs
from coverage under its Lemon Law, see Ind. Code Ann. §24-5-13-5,
Fleetwood's motion for summary judgment will be granted as to Ms.
Snyder's Lemon Law claim.

The Court notes that the outcome would be the same even if
it were to analyze Ms. Snyder's Lemon Law claim as sounding in
contract.  That analysis requires the Court to examine:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract,
and

(e) the domicil, residence, nationality, place of
incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws §188.  All factors weigh
in favor of applying Indiana law, except that Ms. Snyder is an
Ohio resident.  Thus, Indiana law applies, and Fleetwood's motion
for summary judgment will be granted (Doc. 46), and Ms. Snyder's
cross-motion for partial summary judgment will be denied (Doc.
55) as to Ms. Snyder's Lemon Law claim.

For the same reasons, Ms. Snyder's Lemon Law claim against
Spartan is without merit.  Moreover, even if Ohio law applied to

27

this claim, it would be subject to dismissal on the ground that Spartan cannot be liable to the consumer as a component manufacturer of the chassis, as opposed to a final manufacturer. See Dillow v. Mallard Coach Co., 83 Ohio App.3d 801, 803 (4th App. Dist. 1992). Ms. Snyder acknowledges this in her cross-motion for summary judgment which effectively abandons this claim. (Doc. 55 at 18)(stating that "though Defendant Spartan may be liable to Defendant Fleetwood, it may not be liable to Plaintiff under Lemon Law. However, this does not allow Spartan to escape liability under Plaintiff's breach of warranty and breach of contract claims"). For these reasons, Spartan is entitled to summary judgment on Ms. Snyder's Lemon Law claim.

## C. Magnuson-Moss Warranty Act Claim

In her cross-motion for partial summary judgment, Ms. Snyder claims that she "is entitled to recovery for breach of warranty under the Magnuson-Moss Warranty Act." (Doc. 55 at 14). Both Fleetwood and Spartan argue that Ms. Snyder cannot recover under the Magnuson-Moss Warranty Act because her complaint does not plead a claim under that statute. This Court agrees with defendants. Ms. Snyder has not sought leave to amend her complaint to add a new cause of action, and she is thus moving for summary judgment on a claim which is not currently before the Court. Consequently, Ms. Snyder's motion for partial summary judgment on a Magnuson-Moss Warranty Act claim will be denied. (Doc. 55).

## D. Joint Objection

Fleetwood and Spartan filed a "joint objection to the consideration of certain exhibits to Doc # 55," which is Ms. Snyder's cross-motion for partial summary judgment. (Doc. 65). Specifically, Fleetwood and Spartan object to the statement of undisputed material facts, Ms. Snyder's affidavit, the affidavit of her husband, Don Snyder, and uncertified transcripts of

telephone calls. According to Fleetwood and Spartan, these exhibits "either fail to adhere to this Court's procedure, are incompetent, or contain rank hearsay." Id. at 1. Thus, Fleetwood and Spartan request that the Court "disregard, exclude or strike" the documents at issue. Id. at 6. Because the Court did not rely on the disputed exhibits in reaching its decision on the pending motions for summary judgment, the joint objection will be overruled.

## VI. Conclusion

Based on the foregoing, Ms. Snyder's motion to compel is denied (Doc. 47). Ms. Snyder's motion for leave to disclose expert witnesses is also denied (Doc. 86), and defendants' joint motion to strike Ms. Snyder's reply brief in support of her motion for leave to disclose expert witnesses is denied as moot (Doc. 89). Fleetwood's motion for summary judgment (Doc. 46) is denied to the extent that it seeks summary judgment on the breach of contract claim, but it is granted to as to the Lemon Law claim. Spartan's motion for summary judgment on Ms. Snyder's Lemon Law claim is granted (Doc. 44), and Ms. Snyder's cross-motion for partial summary judgment is denied (Doc. 55). Finally, defendants' joint objection to Ms. Snyder's exhibits is overruled (Doc. 65). The parties shall contact the undersigned's courtroom deputy to obtain a trial date.


/s/ Terence P Kemp
United States Magistrate Judge